USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 15 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULIAN GASPAR,

        Plaintiff,

–v–

PERSONAL TOUCH MOVING, INC. et al.,

        Defendant.

13-cv-8187 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    In this action, Plaintiff Julian Gaspar brings various claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and New York law against Defendants Personal Touch Moving, Inc. ("Personal Touch"), Salvatore DiPiazza, and John Does #1–10, who represent Personal Touch's unknown "officers, directors and/or managing agents." Compl. ¶ 12. Before the Court are (1) Defendants' motion to dismiss pursuant to the *Colorado River* abstention doctrine, and (2) Plaintiff's motion for conditional certification and court-authorized notice pursuant to § 216(b) of the FLSA. For the following reasons, Defendants' motion is denied, and Plaintiff's motion is granted.

## I.    Background

    Plaintiff commenced this action on November 18, 2013. In his complaint, Plaintiff states that Defendants run a moving business in Glendale, New York, where Plaintiff worked as a mover from December 2005 through July 2013. Compl. ¶¶ 20–21. DiPiazza is alleged to own, operate, and control the day-to-day operations of Personal Touch. *Id.* ¶ 11. According to

Plaintiff, Personal Touch employed at least 40 other movers during the time that he worked there. *Id.* ¶¶ 22–24.

Plaintiff alleges that during his time working as a mover for Defendants, he worked fourteen-hour days, six days a week (Monday through Saturday). Compl. ¶¶ 27–39. He claims that he was paid a flat hourly rate: $10 per hour for his first six months, and $12 per hour thereafter. *Id.* ¶ 33. In addition, he alleges that Defendants failed to post notices informing employees of their minimum wage and overtime rights. *Id.* ¶ 30. Plaintiff further alleges that Personal Touch's customers gave movers tips, and although he was told that these tips would be included in his wages, Defendants actually kept the tips for themselves. *Id.* ¶¶ 35–42.

Plaintiff's complaint contains four causes of action. Count I alleges minimum wage, overtime, and record-keeping violations under the FLSA. Compl. ¶¶ 73–74. Count II alleges that Defendants failed to pay Plaintiff straight wages, overtime, and a "spread of hours" premium, failed to pay him the tips he had earned from customers, and failed to keep adequate records, all in violation of the New York Labor Law ("NYLL"). *See id.* ¶¶ 79–80. Counts III and IV allege common law breach of contract and unjust enrichment claims, respectively, arising from Defendants' alleged retention of Plaintiff's tips. *Id.* ¶¶ 86–87, 92. Pursuant to 29 U.S.C. § 216(b), the FLSA's collective action mechanism, Plaintiff brings his FLSA claims on behalf a collective comprising other non-exempt movers who were employed by Defendants "at any time since November 18, 2007 . . . who were not paid minimum wages and/or overtime wages." *Id.* ¶ 14.

Defendants filed their motion to dismiss on February 10, 2014, Dkt. No. 11, and Plaintiff filed an opposition brief on February 25, Dkt. No. 29; Defendants did not file a reply brief.

Plaintiff filed his motion for conditional certification and court-authorized notice on February 18, 2014, Dkt. No. 17, and it was fully submitted as of March 15.

## II. Defendants' Motion to Dismiss

In their motion to dismiss, Defendants point to a similar action brought against them in New York state court by four other individuals who worked for Defendants as movers. This state court action was filed on June 3, 2013. *See* Heidecker Aff. Ex. A. In light of this state court action, Defendants argue that Plaintiff's claims should be dismissed under the *Colorado River* abstention doctrine. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). For the following reasons, Defendants' motion is denied.

### A. Legal Standard

A federal court's obligation to hear cases properly within its jurisdiction is "virtually unflagging," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)), and the abstention doctrines recognized by the Supreme Court are narrow exceptions to this general rule. *Colo. River*, 424 U.S. at 817. *Colorado River* abstention, in particular, may be appropriate in contexts involving the "contemporaneous exercise of concurrent jurisdiction" by state and federal courts, where concerns relating to "conservation of judicial resources and comprehensive disposition of litigation" weigh in favor of having only one proceeding. *Id.*

The Second Circuit has cautioned that "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). "The Second Circuit has alternatively described two suits as parallel 'when substantially the same parties are contemporaneously litigating substantially the same issue in another forum,' or when 'the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" *Uni-*

*World Capital L.P. v. Preferred Fragrance, Inc.*, No. 13-cv-7204 (PAE), 2014 WL 888372, at *3 (S.D.N.Y. Mar. 6, 2014) (quoting *Dittmer*, 146 F.3d at 117–18; and *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)) (citations and internal quotation marks omitted). If a parallel proceeding exists, a court then applies six factors to determine whether abstention is appropriate:

> (1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights.

*De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989). This multi-factor test is not a "mechanical checklist," and a court must undertake "a careful balancing of the . . . factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

### B. Discussion

In this case, the Court's analysis begins and ends at the threshold because Defendants have not pointed to a "parallel" proceeding. The plaintiffs in the state court action, like Plaintiff here, worked for Defendants as movers and allege that they were unlawfully denied tips and were not paid adequate overtime wages. *See* Heidecker Aff. Ex. A. They bring three causes of action: (1) individual claims alleging unpaid tips, unpaid overtime, and record-keeping violations under the NYLL; (2) a common law contract claim for unpaid tips; and (3) a common law unjust enrichment claim also relating to unpaid tips. *Id.* ¶¶ 47–62.

Plaintiff is not a named plaintiff in the state court action. Additionally, by stipulation dated August 5, 2014, the parties indicated that the New York trial court has certified an opt-out class with respect to the breach of contract and unjust enrichment claims, but that Plaintiff has opted out of the class. As a result, this action and the state court action do not share "an identity

of parties" because Plaintiff is not a party to the state court action. *Karp*, 108 F.3d at 22; *see Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.*, 17 F.3d 46, 50 (2d Cir. 1994) (reversing district court's decision to abstain in part because the plaintiffs in the two actions were different; "[s]imilarity of parties is not the same as identity of parties" (quoting *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988)) (internal quotation marks omitted)). As explained below, under the circumstances, Plaintiff's absence from the state proceeding is dispositive.

It is true that litigating similar issues against different plaintiffs may give rise to concerns related to issue preclusion, *see* Def. Br. at 4–5; *Garcia v. Tamir*, No. 99-cv-0298 (LAP), 1999 WL 587902, at *5–6 (S.D.N.Y. Aug. 4, 1999), but that alone logically cannot be sufficient to justify abstention if, as is the case here, the federal plaintiff is not a party to the state court action. That is because even if Plaintiff had not opted out of the state court class, he still would not be able to bring his overtime and other employment law claims in that proceeding because the individual plaintiffs there have brought only NYLL claims, and the NYLL, unlike the FLSA, does not contemplate opt-ins. (A plaintiff can bring an opt-out class action under the NYLL, but as noted, the state court plaintiffs have not done so.) Surely Defendants cannot be arguing that Plaintiff can *never* bring his employment law claims simply because another group of plaintiffs has brought similar claims. Therefore, from the standpoint of issue preclusion, permitting Plaintiff to bring those claims in this federal lawsuit actually works in Defendants' favor due to the possibility, however small, that they will win in federal court before losing in state court. In that event, res judicata will bar Plaintiff from re-litigating his claims even though, had he waited until the state court suit concluded to bring those claims in the first place, he could have invoked

non-mutual offensive issue preclusion against Defendants.[1] Put differently, in light of the fact that Plaintiff must be allowed to litigate his employment law claims *somewhere*, the interest Defendants invoke is, at most, an interest in not litigating similar claims in different courts *at the same time*. Yet courts have repeatedly held that that interest is insufficient to support abstention. *See, e.g., Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("The Village . . . maintains that it would have to litigate in both federal and state courts if the district court did not abstain, and that litigating in two forums is necessarily less convenient than litigating in one forum. This argument would eviscerate *Colorado River*, as federal courts consider abstaining under *Colorado River* only in cases where there are concurrent and simultaneous federal and state proceedings.").

For these reasons, the Court concludes that the state court action against Defendants is not "parallel" to this one, so proceeding through the six-factor analysis is not required. *Colorado River* abstention is not warranted in this case, and Defendants' motion to dismiss is denied.

### III.  Plaintiff's Conditional Certification Motion

Plaintiff moves for an order conditionally certifying a FLSA collective action, directing Defendants to disclose the names and contact information of potential opt-in plaintiffs, and authorizing that notice of this action be sent to those potential opt-in plaintiffs. Dkt. No. 17. Defendants oppose Plaintiff's motion, and also lodge several objections to Plaintiff's proposed notice and his proposed method of disseminating it. For the following reasons, the Court grants Plaintiff's motion for conditional certification but will reserve decision on the bulk of the parties'

---

[1] Although it is also possible that Defendants will lose in state court first and that Plaintiff will be able to invoke that judgment in this litigation, that would be equally true if Plaintiff's claims were dismissed without prejudice and he were permitted to refile them at a later date. In other words, that cannot be a reason to abstain.

arguments concerning the content and dissemination of the notice until the parties have met and conferred in an attempt to resolve their disagreements.

## A. Legal Standard

The FLSA authorizes workers to sue on behalf of both themselves and "other employees similarly situated." 29 U.S.C. § 216(b). District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of "the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). In this Circuit, district courts follow a two-step approach in exercising their discretion. First, the court will make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. Second, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If they are not, then the action may be "de-certified." *Id.*

Plaintiff's motion involves the initial determination of whether to send notice to a group of potential opt-in plaintiffs.[2] To demonstrate that there are other "similarly situated" individuals, Plaintiff need only make a "'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). He can meet this burden by presenting evidence that there are other individuals

---

[2] "[W]hile courts speak of 'certifying' a FLSA collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members." *Myers*, 624 F.3d at 555 n.10.

with similar positions, job requirements, pay provisions, and the like; there must be an "identifiable factual nexus which binds [him] and potential class members together as victims of a particular practice." *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-cv-5651 (AJN), 2013 WL 3466810, at *2 (S.D.N.Y. July 8, 2013) (quoting *Ali v. N.Y.C. Health & Hosps. Corp.*, No. 11–cv–6393 (PAC), 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013)) (internal quotation mark omitted).

Plaintiff's burden at this stage is low, but "it is not non-existent," and he cannot rely only upon "unsupported assertions." *Id.* (quoting *Ali*, 2013 WL 1245543, at *2). "Plaintiffs may satisfy their 'minimal' burden by relying on their own pleadings and affidavits, or the affidavits of potential members of the collective action." *Grant v. Warner Music Grp. Corp.*, No. 13-cv-4449 (PGG), 2014 WL 1918602, at *3 (S.D.N.Y. May 13, 2014). At this early stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

### B. Discussion

As noted, Plaintiff's complaint contains several causes of action, including minimum wage and overtime claims under the FLSA (Count I); minimum wage, overtime, and spread-of-hours claims under the NYLL (Count II); and breach of contract and unjust enrichment based on Defendants' allegedly unlawful retention of tips (Counts III and IV). Plaintiff's conditional certification motion focuses on his FLSA overtime claim: he seeks to send notice of this action to a potential group of opt-in plaintiffs that includes non-exempt employees of Defendants who were not paid adequate overtime compensation. Pl. Br. at 2. Accordingly, the Court must ask whether Plaintiff has made the required "modest factual showing" that he and a group of potential opt-in plaintiffs were victims of a "common plan that violated" the FLSA's overtime

provisions.³ *Myers*, 624 F.3d at 555 (quoting *Hoffman*, 982 F. Supp. at 261)). For the following reasons, the Court concludes that Plaintiff has met his burden.

The FLSA's overtime provision requires employers to pay each of their employees "compensation for his employment in excess of [40 hours per week] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2). Plaintiff has submitted affidavits from five of Defendants' employees: himself, Juan Gonzalez, John Valentin, Marcell Bellinger, and Samuel Feliciano. Plaintiff's own affidavit indicates that he worked six fourteen-hour days per week and received a flat hourly rate for his work. Gaspar Aff. ¶¶ 8–10, 13. This evidence adequately suggests that Plaintiff worked more than 40 hours weekly and was not paid time and a half for those excess hours.

Plaintiff's evidence is also sufficient to suggest that there were other "similarly situated" individuals subject to the same unlawful policy. First, Plaintiff indicates that he heard other employees complain about not being paid overtime wages for the hours that they worked in excess of 40 per week. Gaspar Aff. ¶¶ 23, 41–42. These other employees included Gilson Perdiago, Gary Jacelon, Hector Tejada, and Mark Brown. *Id.* ¶ 42. In addition, Gonzalez, Valentin, Bellinger, and Feliciano all indicate in their affidavits that they worked for Defendants in roles similar to Plaintiff's and were not adequately compensated for the excess hours they worked. *See* Gonzalez Aff. ¶¶ 6–9, 12; Valentin Aff. ¶¶ 17–21, 24; Bellinger Aff. ¶¶ 17–21, 21, 24; Feliciano Aff. ¶¶ 17–21, 24. These affidavits also suggest that Defendants employed between 20 and 40 employees who worked as movers. *See, e.g.*, Gaspar Aff. ¶ 4; Valentin Aff.

---

³ In his brief, Plaintiff also points to evidence suggesting that he and other similarly situated individuals were victims of a common plan by Defendants to unlawfully retain workers' tips. Pl. Br. at 7–8. This evidence is not strictly relevant because Plaintiff's tip claims are not FLSA claims. *See Myers*, 624 F.3d at 555 (named plaintiff and potential opt-in plaintiffs must be similarly situated "with respect to whether a FLSA violation has occurred").

¶ 3. Taken together, this evidence is sufficient, at this stage, to suggest that Plaintiff is "similarly situated" to other individuals with respect to Defendants alleged violation of the FLSA's overtime provision. *Cf. Juarez v. 449 Rest., Inc.*, — F. Supp. 2d —, No. 13-cv-6977 (AJN), 2014 WL 3361765, at *5 (S.D.N.Y. July 2, 2014).

Defendants' arguments to the contrary suggest that Defendants have not read Plaintiff's submissions. For example, Defendants accuse Plaintiff of not identifying other individuals who were improperly compensated or providing specific evidence to suggest that those other individuals were not lawfully compensated. Def. Br. at 9. But Plaintiff has not only identified other individuals by name in his own affidavit and averred that they were not adequately compensated for their overtime work, Gaspar Aff. ¶ 42; he has also submitted four sworn affidavits by other employees that describe, in detail, the basis of their claims that they were not lawfully compensated. Plainly, Plaintiff *has* provided "evidence about the hours worked by these individuals [and] the compensation received by these individuals." Def. Br. at 10; *see* Gonzalez Aff. ¶¶ 6–9, 12; Valentin Aff. ¶¶ 17–21, 24; Bellinger Aff. ¶¶ 17–21, 21, 24; Feliciano Aff. ¶¶ 17–21, 24. Defendants also protest that "identifying similarly situated employees by name is a requirement for a motion for a collective action to be granted." Def. Br. at 10. This argument, of course, does not provide a basis for denying Plaintiff's motion, since Plaintiff has supplied the names of *eight* other individuals that he claims are similarly situated. Plaintiff's motion for conditional certification and court-authorized notice is granted.

### C. Plaintiff's Proposed Notice

Having concluded that court-authorized notice should be sent to a potential opt-in class of similarly situated employees, the Court turns to the form of such notice and its method of distribution. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes

about the content of the notice before it is distributed." *Hoffmann–La Roche*, 493 U.S. at 172. "[T]he district court has discretion regarding the form and content of the notice." *In re Penthouse Exec. Club Comp. Litig.*, No. 10-cv-1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010).

Plaintiff has submitted a proposed notice, and Defendants raise numerous objections both to the content of the notice and Plaintiff's proposed method of distributing it. *See* Def. Br. at 11–18. The Court is confident that the parties can reach agreement on the bulk of these objections through their own good-faith efforts, but the Court will address one dispute that can be resolved now. Plaintiff argues that notice should be sent to individuals employed by Defendants in the six years before the filing of his complaint, while Defendants contend that this period should be limited to two years before the date of this order. Pl. Br. at 15; Def. Opp. at 12. This debate implicates two legal issues, which the Court will discuss in turn.

First, the FLSA's statute of limitations for overtime claims is two years unless the violation was willful, in which case the limitations period is three years. 29 U.S.C. § 255(a). This Court has previously held that where willfulness is disputed, it is appropriate to look to the three-year period in determining the scope of a collective action. *See Ouedraogo*, 2013 WL 3466810, at *4 & n.1 (citing *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)). In this case, Plaintiff alleges that Defendants' FLSA violations were willful, *see* Compl. ¶ 75, so the Court concludes that the FLSA's three-year limitations period, as opposed to the two-year period urged by Defendants, is appropriate.

The Court rejects Plaintiff's argument that a *six*-year limitations period—the period prescribed by the NYLL—should apply simply because this action also includes NYLL claims. Courts in this Circuit are split on the appropriateness of adopting the NYLL's limitations period

for the purpose of sending FLSA notice to a group of opt-in plaintiffs. Some have done so, emphasizing that even opt-in plaintiffs whose FLSA claims are untimely may nonetheless "shed light on the appropriateness of certifying a class action under the NYLL." *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13-cv-5124 (AT), 2014 WL 1487279, at *6 (S.D.N.Y. Apr. 11, 2014) (quoting *Guaman v. 5M Corp.*, No. 13-cv-3820 (LGS), 2013 WL 5745905, at *5 (S.D.N.Y. Oct. 23, 2013)) (internal quotation mark omitted). This Court, however, finds the contrary view more persuasive. In particular, authorizing notice to employees whose FLSA claims are untimely would amount to sending those employees "a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to class certification." *Lujan v. Cabana Mgmt., Inc.*, No. 10-cv-755 (ILG), 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011). For these employees, receiving an opt-in notice might be quite confusing. *Accord Juarez v. 449 Rest., Inc.*, No. 13-cv-6977 (AJN), slip op. at 2 (S.D.N.Y. Aug. 22, 2014); *Ramos v. Platt*, No. 13-cv-8957 (GHW), 2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014); *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119 (RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013). Nor is the Court convinced that a FLSA opt-in notice is an appropriate venue for "shedding light" on the suitability of certifying a NYLL class action later on. An FLSA notice should inform opt-in plaintiffs of their right to bring FLSA claims, not advance counsel's tangential interest in certifying a class of NYLL plaintiffs who (in some cases) *cannot* bring FLSA claims.[4] *See Trinidad*, 962 F. Supp. 2d at 564. Thus, a three-year limitations period is appropriate.

---

[4] In fact, in this case, Plaintiff's complaint does not indicate that he is contemplating moving for Rule 23 certification with respect to his state law claims.

The second legal issue involves the fact that the statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint. *See* 29 U.S.C. § 256(b); *Ouedraogo.*, 2013 WL 3466810, at *4 n.2. However, "[b]ecause equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Trinidad*, 962 F. Supp. 2d at 564 n.14 (quoting *Hamadou*, 915 F. Supp. 2d at 668) (internal quotation marks omitted). Additionally, in this case, Plaintiff alleges that Defendants did not post the workplace notices that the FLSA requires—which some courts have held implicates equitable tolling. *See Baba v. Grand Cent. P'ship, Inc.*, No. 99-cv-5818 (TPG), 2000 WL 1808971, at *3 (S.D.N.Y. Dec. 8, 2000). Because there is therefore reason to believe that opt-in plaintiffs with untimely claims may have colorable equitable tolling arguments, the Court concludes that the three-year limitations period should extend from the date of the filing of Plaintiff's complaint.[5] *Cf. Ouedraogo*, 2013 WL 3466810, at *4 n.2 (declining to key the limitations period from the filing of the complaint given that the plaintiff did not allege any circumstances that might justify equitable tolling).

Again, the Court is confident that the bulk of the remaining disputed issues discussed in the parties' briefs can be resolved by the parties themselves. Accordingly, the parties are directed

---

[5] Plaintiff also suggests that this same equitable tolling argument justifies extending the period to six years, presumably on the ground that some opt-in plaintiffs' claims might have been tolled for several years in light of Defendants' alleged failure to post FLSA notices. Pl. Br. at 14. But it is hard to identify a limiting principle to this argument: why not seven or eight years? Although courts have often pointed to tolling as a reason to look to the complaint's filing date rather than the notice date, Plaintiff does not cite any on-point authority extending the period *earlier* than three years before the complaint's filing date for tolling reasons alone. In the one case Plaintiff cites, the court had also certified a Rule 23 class involving NYLL claims, so there was less danger of confusion. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007).

to meet and confer and engage in a good-faith effort to agree on both the text of the proposed notice and its method of dissemination. The parties must, by September 23, 2014, submit a joint letter to the Court of no more than eight pages. The letter should (1) represent that the parties have met and conferred, (2) if any disagreement remains, identify the precise issues on which there is disagreement, and (3) set forth each side's position on those issues. If there is disagreement, parties should cite case law from courts in this Circuit that supports their arguments. After resolving any contested issues, the Court will ask the parties to submit a joint proposed notice that reflects such resolution.

### IV.   Conclusion

For the foregoing reasons, Defendants' motion is DENIED and Plaintiff's motion is GRANTED.

The parties must submit a joint letter by September 23, 2014 concerning the notice to be sent to potential opt-in plaintiffs. By that same date, the parties are also directed to submit, as discussed at the July 30, 2014 status conference, a proposed schedule for the completion of this litigation.

This resolves Docket Nos. 11 and 17.

SO ORDERED.

Dated:   September 15, 2014
         New York, New York

_____
ALISON J. NATHAN
United States District Judge